775 A.2d 1

JOHN J. SPULER, PLAINTIFF–APPELLANT, v. DEPT. OF
HUMAN SERVICES, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted March 14, 2001—Decided April 5, 2001.

See also: 340 N.J.Super. 615, 775 A.2d 96.

Before Judges KING, LEFELT and AXELRAD.

John J. Spuler, appellant pro se.

No brief was filed on behalf of respondent.

The opinion of the court was delivered by

AXELRAD, J.T.C. (temporarily assigned).

John Spuler appealed a levy on his bank account by the State of New Jersey Department of Human Services, Division of Family Development, Office of Child Support & Paternity Programs–FIDM Unit (DHS), for child support arrears. Spuler filed a motion "Staying the levy to obligor and to proceed as indigent," in which he requested that the levy be lifted based upon a December 1, 2000 order from Family Part Judge Louise Donaldson continuing the payment of arrears at the rate of $100 per week. He also requested that we direct his bank to issue copies of twenty-seven personal checks which he claimed he issued directly to his ex-wife, so he could obtain credit for those payments. DHS did not respond to his motion.

Our research resolving this motion disclosed the following information. Pursuant to the "Personal Responsibility and Work Opportunity Reconciliation Act" of 1996, 42 *U.S.C.* § 666(a), New Jersey enacted enabling legislation on March 5, 1998, entitled the "New Jersey Child Support Improvement Act" (Support Improvement Act), *N.J.S.A.* 2A:17–56.53 and 56.57. The New Jersey statute authorizes DHS to conduct quarterly data matches with banks and other financial institutions based on the obligor's social security number in order to identify financial assets, and to freeze and seize the funds in order to satisfy child support arrears. *N.J.S.A.* 2A:17–56.53g(2) and –56.57d.

The Financial Institution Data Match (FIDM) program not only involves cases where the recipient receives state assistance, such as AFDC grants, but also provides an administrative support enforcement mechanism for the collection of privately-owed child support payable through probation. DHS is involved as the statutorily authorized implementing agency.

The FIDM Unit obtains payment history information from the judiciary's Automated Child Support Enforcement System (ACS-ES). The selection criteria for the FIDM program is defined in the Support Improvement Act as "all non-custodial parents . . . who owe past due child support that equals or exceeds the amount of support payable for three months and for which no regular payments are being made." *N.J.S.A.* 2A:17–56.57a. A private vendor hired by the State collects data from the banks and other financial institutions of all accounts belonging to the obligor who qualifies for FIDM, or of which the obligor is a co-owner. Accounts subject to levy and seizure include a "demand deposit account, checking or negotiable withdrawal order account, savings account, time deposit account, or money-market mutual fund account." *42 U.S.C.* § 666(a)(17)(D)(ii).

DHS then electronically transmits to the bank a Notice of Levy on the account, freezing access to the funds up to the amount of child support owed, and directing the bank to remit the funds to the New Jersey Family Support Payment Center (Payment Center) after forty days unless otherwise instructed by DHS. Within about three to five days thereafter, the obligor is mailed a Notice of Levy which provides instructions on how to contest the agency's action. Also included in the notice are reasons that the action may be contested, such as mistaken identity, incorrect arrearage amount, pending bankruptcy, court litigation that may affect the amount of support arrears, joint ownership of account, indigency or extreme hardship. The obligor is also informed that the levy will be removed if the specified past due child support is paid in full within thirty calendar days of the notice date.

When DHS is notified of a valid contest, the case is put on hold, the account remains frozen, and the bank is directed not to remit the funds. If the obligor contests the arrearage amount and provides documentation of uncredited monies paid for support or court-ordered adjustments, the FIDM Unit requests the county probation department to conduct an audit, and appropriate adjustments are made.

If an obligor does not agree with the FIDM Unit's Interim Decision concerning their contest,

> [d]epending on the issue(s) contested, the obligor has the right to bring the matter to the NJ Superior Court. If the disputed issue at hand concerns the amount of child support arrears, legal custody, or a similar matter related to the care and support of children, then the obligor (or counsel on their behalf) may bring a motion to the Family Court of venue. At the obligor's request, the FIDM Unit in conjunction with the Probation Division may arrange to schedule the matter for an expedited hearing pertaining to support and custody issues that cannot be resolved administratively by the Unit. If the obligor disagrees with a decision concerning issues other than support and custody, they would need to file an appeal with the Appellate Division of Superior Court. . . .

> [FIDM Program Summary].

The Final Determination which is mailed to the obligor includes notification of the right to file an appeal within forty-five days from the date of receipt of the decision or notice of the action taken. The notice also informs the obligor of the obligation to provide proof of filing to the agency within that time; otherwise, the levied funds will be remitted to the Payment Center.

On December 18, 2000 DHS levied upon Spuler's bank account at First Union National Bank in Philadelphia in order to collect past due child support arrears of $6721. Notice of the levy was mailed to Spuler three days later. Although we do not know the content of Spuler's communication with the FIDM Unit, it appears that he provided sufficient documentation of uncredited monies paid for support, since the agency's final determination mailed on January 22, 2001 reduced the arrears to $6203. As Spuler is appealing the agency's action for enforcement of child support, and not a court order, the payee was not named as a party or provided notice of this appeal.

We have several major concerns in this matter. The child support payee does not receive notice of the levy and does not have an opportunity to be heard in the matter before us. Moreover, we do not have a sufficient record to determine whether the levy should be lifted or the funds remitted to the Payment Center. We have no knowledge as to whether the judge or the payee was aware of this account and have no transcript of the December 1, 2000 hearing before Judge Donaldson. Although we can surmise

that there was a reason for the judge continuing the payment of $100 per week on the sizable arrears, rather than requiring a lump sum payment on account, we do not know the underlying facts of this case. Nor do we know whether Spuler complied with the order, as we do not have an updated ACSES printout of his payment history.

Accordingly, we transfer this matter to Judge Donaldson of the Family Part, Camden County, pursuant to *R.* 1:13–4. The levy on Spuler's bank account will continue in effect pending further order of the Family Part Judge. We direct a hearing within thirty-five days on the issue of the arrears and disposition of funds frozen by the levy, with notice of the hearing to be provided by the court to the payee and obligor. At the hearing, Spuler can advise the judge, who is familiar with the support matter, of his objections to the levy and renew the requests contained in this appeal. We do not retain jurisdiction.

As the FIDM enforcement procedure has recently been implemented centrally by DHS, we suggest the issue be considered by the Family Practice Committee of the Supreme Court so that the views of family practitioners and the family bench may be exchanged, and consideration can be given as to the appropriate forum for these appeals.